**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

GREAT LAKES INDUSTRIAL
ENVIRONMENTAL CONSTRUCTION, LLC )
                                )
            Plaintiff,           )
    v.                           )          Case No. 2:25-cv-550
                                )
SETH RYAN DIXON, JOSEPH J. SCHOONOVER)
SRD ENVIRONMENTAL, LLC          )
SRD EXCAVATION CORPORATION       )
                                )
                                )
            Defendants          )

## COMPLAINT

Comes now Plaintiff, Great Lakes Industrial Environmental Construction LLC,

("GLIEC"), by counsel, Richard P. Long of Long Meihofer, LLC., and for its Complaint against

Defendants, Seth Ryan Dixon, Joseph J. Schoonover, SRD Environmental, LLC, SRD Excavation

Corporation, (collectively, "Defendants"), states as follows:

## NATURE OF ACTION

1.      Plaintiff, Great Lakes Industrial Environmental Construction LLC, (GLIEC), is an

Indiana based limited liability company located in Lake County, Indiana that offers industrial

cleaning and environmental remediation services as well as maintenance and emergency

response services for steel, oil and other industrial and commercial companies in Illinois and

Indiana. Its Chief Executive Officer is Jason Torres-Regnier, and its President is William

Darling. These are the only individuals that have authority to bind the Company on any financial

Transaction Events, including loans or cash advances.

1

Defendants, Seth R. Dixon, and Joseph Schoonover are associated with SRD Environmental, LLC and SRD Excavation Corporation, located in Gilbert, Arizona. GLIEC has no relationship or association with any of these defendants. Upon information and belief, each of these defendants conspired together and with cooperation and/or lax lending practices of lending companies, MEGED Funding Group d/b/a Kingdom Kapital and Forever Funding LLC to fraudulently enter into Standard Merchant Cash Advance/loan Agreements utilizing GLIEC's credit, tax identification number, and business information. Defendants falsely represented themselves to be the owners of GLIEC.

Specifically, during the Summer of 2025, Dixon and Schoonover misrepresented themselves to the lending companies as owners and authorized agents of GLIEC. Without any authority from GLIEC or  Regnier, Dixon and Schoonover executed a Merchant Cash Agreement with MEGED and Forever Funding, LLC. In order to execute these Merchant Cash Advances, Dixon and Schoonover misused and misappropriated GLIEC's name and federal tax identification number. These actions were taken without the knowledge or approval of GLIEC or Regnier, and contrary to the Company's corporate authority and governance.

Defendants conspired together to have cash advancements issued to Dixon, Schoonover, and/or the SRD entities. MEGED Funding Group d/b/a Kingdom Kapital and Forever Funding LLC also caused UCC Financing Statements to be filed against GLIEC alleging that it had undertaken financing with the lending entities. Subsequently, after Dixon, Schoonover, SRD Excavating and SRD Environmental defaulted on one or more Cash advance/loan agreements, two of the financiers, MEGED Funding Group d/b/a Kingdom Kapital and Forever Funding LLC improperly filed UCC Financing Statements and subsequently dispatched UCC Lien Notices to legitimate GLIEC customers. One of the financing companies also initiated litigation against

2

GLIEC claiming breach of contract for defaulting on the advances/loans. The financing company also sought to enforce personal guarantees, allegedly made by GLIEC on the cash advances/loans. Said lien notices were issued despite knowledge of their fraudulent nature.

Defendants' are guilty of fraud, conversion, criminal deception, identity theft, racketeering/RICO, fraudulent conduct, defamation, and deception.  As a result of Defendants' acts and omissions, GLIEC has suffered damages, lost revenue, attorney fees, and credit downgrading.

## **PARTIES**

2.    Plaintiff, Great Lakes Industrial Environmental Construction LLC, and its owners and agents, (collectively "GLIEC"), is a single member limited liability company organized and existing under the laws of the State of Indiana with its principal place of business in Gary, Indiana.

3.    Defendant, Seth R. Dixon, ("Dixon"), is an individual and citizen of the State of Arizona.

4.    Defendant, Joseph Schoonover, ("Schoonover"), is an individual and citizen of the State of Texas, residing at 2117  Sweet Bay Dr., La Margue, TX, 77568.

5.    Defendant, SRD Excavation Corporation ("SRD Excavation"), is a corporation organized and existing under the laws of the State of Arizona with its principle place of business located at 2111 E. Melrose Street, Gilbert, Arizona, 85297.

6.    Pursuant to filings made with the Arizona Corporation Commission, SRD Excavation's Chief Executive Officer is Seth R. Dixon.

7.    Pursuant to filings made with the Arizona Corporation Commission, SRD Excavation's Chief Operating Officer is Joseph Schoonover.

8.     Defendant, SRD Environmental LLC, ("SRD Environmental"), is a limited liability company organized and existing under the laws of the State of Arizona with its principle place of business located at 2111 E. Melrose Street, Gilbert, Arizona, 85297.

9.     Pursuant to filings made with the Arizona Corporation Commission, SRD Environmental LLC's Manager is Seth Ryan Dixon.

## JURISDICTION

10.     This Court has subject matter jurisdiction in this case pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Alternatively, this Court has subject matter jurisdiction in this case pursuant 28 U.S.C. § 1332, and the matter in controversy exceeds the sum of seventy-five thousand dollars, exclusive of interest and costs. At present, third-parties have filed claims and are attempting to collect $372,750.00 from fictitious loan agreements.

## VENUE

11.     Venue is proper in this District pursuant to: 18 U.S.C. § 1965(a) because one or more of the Defendants resides, may be found, has an agent, or transacts business in this District; and/or, 18 U.S.C. § 1965(b) because the ends of justice require that the parties residing in any other district be brought before this Court; and/or, 28 U.S.C. § 1391(a) and 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this District.

12.     In particular, venue is proper as Defendants/Co-conspirators, Dixon and Schoonover, individually, and on behalf of their companies, SRD Excavation Corp and SRD Environmental LLC: (i) came to Indiana to solicit the purchase of GLIEC under false pretenses, (ii) met with GLIEC personnel on or more times in March of 2025 to solicit entry into an asset

purchase agreement, (ii) obtained access to GLIEC's confidential QuickBooks operations account, (iii) obtained financial and tax information from GLIEC while in this District, (iv) accessed and took GLIEC's business identity and credit profile, (v) accessed and took copies of its financial accounts, equipment lists, outstanding receivables and client identification records while in the District, (vi) traversed multiple state lines, and conspired to commit fraud in other states, including New York.

13.     In connection with the wrongs complained of herein, Defendants directly or indirectly used the means and instruments of interstate and foreign commerce, including the United States mail and interstate and foreign wire communications.

## FACTUAL BACKGROUND

14.     Defendant, Seth Dixon, approached GLIEC CEO Jason Torres Regnier ("Regnier") in March 2025 with the purported intent of acquiring Great Lakes Industrial Environmental. Dixon and Schoonover both came to Indiana to pursue the alleged plan to purchase the Company.

15.     Defendant, Joseph Schoonover, previously worked for GLIEC as a project manager and had arranged the meeting between Dixon and Regnier.

16.     As part of his request to purchase the Company from Regnier, Dixon requested access to all financials, client lists, receivables, outstanding receivables, debts, equipment list, mortgages or loans and other collateral.

17.     Dixon signed an NDA agreement, agreeing and promising not to utilize any disclosed information for any improper purpose or for any reason other than completing his due diligence as part of the asset purchase attempt.

18.     When it became clear that the Defendants did not have the assets or creditworthiness to complete the purchase of GLIEC, and when it became clear that Dixon and

the other defendants may have other motives not related to an actual purchase of the Company, negotiations were terminated.

19.    Noteworthy were Dixon's attempts on March 23, 2025, to have Regnier execute a an unlimited "Power of Attorney" to Dixon during the "due diligence" period. (**Exhibit "A"**)

20.    Following the termination of negotiations, and against Regnier's express wishes, Dixon began communicating with GLIEC's management level employees, including Mike Fitzpatrick and Michael Niloff.

21.    In August of 2025, Regnier began receiving U.S. mail showing Seth Ryan Dixon as the President of Great Lakes Industrial. (**Exhibit "B"**)

22.    On September 30, 2025, Great Lakes Industrial was served with summons for litigation filed in the Supreme Court of the State of New York. Plaintiff was identified as MEGED Funding Group Corp. d/b/a Kingdom Kapital. (**Exhibit "C"**)[1]

23.    The Defendants were identified as Great Lakes Industrial Environmental Construction LLC, SRD Excavation Corporation, SRD Environmental LLC, Seth Ryan Dixon, and Joseph J. Schoonover.

24.    The lawsuit was brought to collect on a loan, referred to as a "Standard Merchant Cash Advance Agreement, purportedly entered into between the Plaintiff and Great Lakes Industrial Environmental Construction LLC.

25.    The Kingdom Kapital ("KK Agreement") Agreement was signed by "Seth Ryan Dixon, Owner" and by Joseph J. Schoonover, Owner" who attested in the Agreement that they were authorized to sign the agreement on behalf of GLIEC.  (**Exhibit "D"**)

---

[1] As identified by New York courts, purveyors of "Standard Merchant Case Advance Agreements" are commonly referred to as "hard money lenders." See Premium Merch. Funding 18 v. Honan, 24 Civ 1199(CM)(S.D. N.Y. Dec 02, 2024) – U.S. District Court – Southern District of New York

26.    Dixon and Schoonover also signed personal guarantees as "owners."

27.    The Standard Merchant Cash Advance Agreement listed GLIEC's "business address" as 1030 E. 10th Place, Gary, IN and its contact address as 2111 E. Melrose Street, Gilbert, Arizona.

28.    Defendant, Dixon, provided GLIEC's federal tax identification number on the agreement with Kingdom Kapital and signed the agreement as the "owner" of GLIEC.

29.    The 2111 E. Melrose Street address is a residence in Gilbert, Arizona and is also listed as the business address for SRD Excavation and SRD Environmental.

30.    GLIEC does not have an office or location in Arizona and has no relationship with SRD Excavation Corp. and SRD Environmental, LLC, both registered Arizona business entities.

31.    The agreement does not contain the signature of any GLIEC representative.

32.    By fraudulently signing the KK Agreement in the name of GLIEC, Dixon and Schoonover gave Kingdom Kapital a security interest in its accounts and/or receivables and has encumbered its business with debt. It also authorized GLIEC's banks to provide KK with banking and/or credit card processing histories, authorized the release of GLIEC's bank or financial statements, tax returns, and other records.

33.    Defendants did not have any authority to sign on behalf of GLIEC and are guilty of fraud, deception, conversion, criminal deception, and conspiracy.

34.    The subject New York lawsuit seeks recovery against GLIEC in the amount of $251,687.50.

35.     Dixon and Schoonover also caused a business bank account to be opened in the name of GLIEC with U.S. Bank, using GLIEC's federal ID number under Account Number 151709847884.

36.     Additionally, on or about July 8, 2025, Defendants, Dixon, Schoonover, and SRD Excavation entered into a **second** "Standard Merchant Cash Advance Agreement"/loan with Forever Funding, LLC, 2389 Main Street, STE 100, Glatstonbury, CT 06033.

37.     The Forever Funding agreement, ("FF Agreement") was signed by Joseph Schoonover, purportedly with SRD Excavation Corporation. (**Exhibit "E"-** Agreement and Lien notice to Illini Environmental, Inc)

38.     By signing the FF agreement, Schoonover attested that he was authorized to sign the agreement on behalf of SRD Excavation Corporation.

39.     Forever Funding, by and through its attorneys, The Law Offices of Steven Zakharyayev, PLLC, improperly began issuing UCC Lien Notices to GLIEC's customers despite not having identified GLIEC as a party to the agreement and not having filed UCC Financing Statements with the State of Indiana. (**Exhibit "E"** – Illini Environmental Inc, **Exhibit "F"** Northern Plant Services)

40.     Despite GLIEC <u>not</u> being listed as a party to the FF Agreement, Forever Funding, by its attorneys, continue to issue letters with UCC Lien Notices and Power of Attorney notification <u>to GLIEC customers</u>.

41.     SRD Excavation Corporation and SRD Environmental LLC are not associated with GLIEC, do not share the same customers, and do not reside or have a business address of 1030 E. 10th Place, Gary, Indiana.

42.     GLIEC does not operate its business under any assumed name such as SRD Environmental LLC or SRD Excavation Corporation.

43.     SRD Excavation Corporation and SRD Environmental LLC are Arizona entities registered with the Arizona Corporation Commission.

44.     SRD Excavation Corporation and SRD Environmental LLC are not listed as registered entities with the Indiana Secretary of State.

45.     The Standard Merchant Cash Advance Agreement lists the signing Merchant as SRD Excavation, with a business address of 2111 E. Melrose Street, Gilbert, Arizona, and a "Contact Address" of 24258 S. Timberline TRL, Crete, Illinois.

46.     GLIEC does not have a business address or business location in Gilbert, Arizona or Crete, Illinois.

47.     Defendant, Schoonover, upon information and belief, provided GLIEC's federal tax identification number to Forever Funding, LLC.

48.     The 2111 E. Melrose Street address is a residential address in Gilbert, Arizona and is also listed as the business address with the Arizona Corporation Commission for SRD Excavation Corporation and SRD Environmental LLC.

49.     GLIEC does not have an office or location in Arizona and has no relationship with SRD Excavation and SRD Environmental, both registered Arizona business entities.

50.     The FF agreement also does not contain the signature of any GLIEC representative.

51.     By fraudulently either signing the FF Agreement in the name of GLIEC or identifying GLIEC as a related business entity to SRD Excavation Corp and SRD Environmental, Dixon and Schoonover gave Forever Funding a security interest in its accounts

and/or receivables and has encumbered its business with debt. It also authorized GLIEC's banks to provide Forever Funding with banking and/or credit card processing histories and authorized the release of GLIEC's bank or financial statements, tax returns, and other records.

52.    Defendants did not have any authority to sign on behalf of GLIEC or advise, suggest, or imply any business relationship with the SRD entities or Schoonover and thus, are guilty of fraud, deception, criminal deception and conspiracy.

53.    Forever Funding, through its attorneys, have dispatched UCC lien notices to GLIEC customers, not SRD Excavation and SRD Environmental LLC's customers, with lien notices claiming entitlement to outstanding amounts rightfully owed to GLIEC.

54.    Pursuant to the attorney letter sent by Forever Funding's attorney, Steven Zakharyayev, Esq. and verified by Forever Funding LLC representative, Isaac Louz, it seeks recovery of $121,062.50.

55.    GLIEC has reported this fraudulent and criminal activity to both its local police department and to the Federal Bureau of Investigation.

56.    To date, third-parties seek to recover $372,750.00 from GLIEC due to the fraud committed by the defendants.

**COUNT I**
**VIOLATIONS OF RICO 18 U.S.C. § 1962(c)**
**(AGAINST ALL DEFENDANTS)**

57.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 56 and incorporates them by reference herein as if fully set forth.

58.    At all relevant times, Plaintiff and each of the Defendants were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

59.    This enterprise was not a specific legal entity, but rather a union or group of individuals associated in fact.

60    Defendants' Conspiracy is an association-in-fact for the common and continuing purpose described above, and which constitutes an enterprise ("Enterprise"). The Enterprise consisted of, among others: (a) Seth Ryan Dixon, (b) Joseph Schoonover, (c) SRD Excavation Corporation, and (d) SRD Environmental LLC.

61.    The Enterprise engaged in interstate commerce and activities which affect interstate commerce by conspiring to acquire business identities to falsely and fraudulently obtain financial benefits, including loans, cash advances, credit, and purchasing power across state lines. (collectively, "The Transaction Events")

62.    The Defendants that make up the Enterprise, either individually or through their agents, formed the Enterprise to participate in Defendants' Conspiracy, whose main purpose was to generate and obtain income and/or funding by a common plan, transaction and course of conduct described herein in connection with the promotion and use of the GLIEC name, credit, tax identification, client base and business revenues, pursuant to which each Defendant knew or recklessly engaged in acts, transactions, practices and a course of conduct of business which operated as a fraud upon GLIEC.

63.    While Defendants participated in the Enterprise and were part of it, the Defendants also had and have an existence separate and distinct from the Enterprise.

64.    The Enterprise had an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendants engaged in, directing and controlling the conduct of the Enterprise in furtherance of Defendants' Conspiracy.

65. Defendants' control and participation in the Enterprise was necessary for the successful operation of Defendants' Conspiracy, which included, among other things:

    a. Establishing a common plan to falsely pretend to have interest in an asset purchase agreement of the GLIEC Company;

    b. Obtain by false pretenses, all financial records of GLIEC, including its assets, property, real estate holdings, tax information, client lists, and outstanding receivables;

    c. Establishing a common plan to falsely represent themselves to lenders and financiers as lawful representatives of GLIEC in order to obtain lending and advances, and

    d. Concealing the true nature of the relationship between Defendants from GLIEC and its representatives.

66. Each Defendant played an important role in the success of the Enterprise:

    a. Dixon and Schoonover were responsible for promoting the asset purchase of GLIEC and providing inflated purchase offers to further the sale;

    b. Schoonover was responsible for making the introduction of Dixon to Regnier and to confirm his interest and ability to make the purchase of GLIEC;

    c. Dixon was responsible for obtaining all of the financial records of GLIEC, including QuickBooks access, bank account access, client list and receivables and tax information, including FEIN identification, first attempting to obtain a broad "Power of Attorney" granting access prior to completion of any sale to enter into any transaction under the GLIEC name and credentials

d.    Dixon was responsible for falsely and fraudulently representing to Kingdom
Kapital that he was the owner of GLIEC and enter into the KK Agreement and
receive direct funding;

e.    Schoonover was responsible for falsely and fraudulently representing to Forever
Funding, LLC that he was a representative of GLIEC and GLIEC was doing
business as SRD Excavation and SRD Environmental, LLC and therefore could
enter into the FF Agreement and receive direct funding.

67.    Defendants conducted or participated in the conduct of the Enterprise's affairs
through a pattern of racketeering activity. 18 U.S.C. 1961(1) provides that "racketeering
activity" is limited to the specific acts statutorily enumerated, including mail and wire fraud
under 18 U.S.C. § 1341 (mail) and 18 U.S.C. § 1343 (wire). As set forth herein, Defendants
engaged in conduct violating each of these laws to effectuate Defendants' Conspiracy and to
defraud GLIEC and others in furtherance of the "The Transaction Events."

68.    For the purpose of executing and/or attempting to execute false and fraudulent
applications for cash advances and/or loans, and to obtain money by means of false pretenses,
representations, or promises, the Defendants, in violation of 18 U.S.C. § 1341 placed in post offices
and/or in authorized repositories for mail matter and things to be sent or delivered by the Postal
Service and received matter and things therefrom including but not limited to contracts, loan
documents, promissory notes, trust documents, instructions, correspondence, opinion letters, and
other related documents. These acts were done intentionally and knowingly with the specific intent
to advance Defendants' Conspiracy, or with the knowledge that the use of the mails would follow
in the ordinary course of business, or that such use could have been foreseen, even if not actually

intended. Defendants carried out their scheme in different states and could not have done so unless they used the Postal Service or other private/commercial interstate carriers.

69.    For the purpose of executing and/or attempting to execute "The Transaction Events" and  to defraud and to obtain money by means of false pretenses, representations, or promises, the Defendants, in violation of 18 U.S.C. § 1343 transmitted, caused to be transmitted and/or received by means of wire communication in interstate and foreign commerce, various writings, signs and signals. These acts were done intentionally and knowingly with the specific intent to advance Defendants' Conspiracy, or with the knowledge that the use of wire communications would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. Defendants carried out their scheme in different states and could not have done so unless they used wire communication in interstate and foreign commerce.

70.    For purposes of both mail and wire fraud, the matter and things sent by Defendants by Postal Service, private or commercial carrier and by wire across interstate lines include, among other things:

  a.    Contracts that falsely and fraudulently misled GLIEC about the activities taken and to be undertaken in furtherance of the Transaction Events;

  b.    Loan documents that falsely and fraudulently misled GLIEC and financing companies about the activities taken and to be undertaken in furtherance of the Transaction Events;

  c.    Structured "Power of Attorney" agreements and proposed "asset purchase agreements" that falsely and fraudulently misled GLIEC about the true nature of the activities taken and to be undertaken in furtherance of the Transaction Events;

14

d.   Correspondence from Defendants that falsely and fraudulently misled GLIEC about the activities taken and to be undertaken in furtherance of its plan to steal its identity and the Transaction events; and

e.   Other matter and things sent through or received from the Postal Service, private or commercial carrier and by wire across interstate lines in furtherance of the Transaction events.

71.   At least two of the predicate acts of mail and wire fraud identified herein were committed within the last year.

72.   Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving GLIEC and obtaining its property for Defendants' gain. Defendants either knew or recklessly disregarded the fact that their misrepresentations and omissions described herein were material, and GLIEC relied upon the misrepresentations and omissions described herein.

73.   The Defendants made continual use of mail and wire transmissions to effectuate their fraudulent scheme, and additionally, transmitted numerous specific fraudulent statements to Plaintiff and other parties, by mail or wire, as described herein.

74.   As a result, Defendants have obtained money and property belonging to GLIEC, namely wrongfully obtaining its identity, credit, client base, outstanding receivables and encumbering it with indebtedness affecting its viability and credit rating and GLIEC has been injured in his property by Defendants' overt acts of mail and wire fraud.

75.   Defendants, each of whom are persons associated with the Enterprise, did knowingly and willfully conduct or participate in the affairs of the Enterprise through a "pattern

of racketeering activity" pursuant to 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). As set forth above, Defendants committed and/or conspired to aid and abet Transaction Events in furtherance of Defendants' Conspiracy and the Transaction Events for at least two such acts of racketeering activity, as described above, within the past year. Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and methods of commission, and had similar results impacting upon unwitting participants, including GLIEC.

76. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by Defendants, as described above, were related to each other and amount to and pose a threat of future racketeering activity, and therefore, constitute a "pattern of racketeering."

77. This claim for relief arises under 18 U.S.C. § 1962(c) which provides that "it shall be unlawful for any person ... associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...."

78. As set forth above, Defendants have violated 18 U.S.C. §1962(c) by conducting or participating directly or indirectly in the conduct of the affairs of the Enterprise through a pattern of racketeering. Through the fraudulent and wrongful conduct described herein, Defendants deprived GLIEC of property rights. In order to successfully execute their scheme in the manner set forth herein, Defendants had a common plan and system to market and promote the Transaction Events. The Enterprise was the vehicle for the common plan and system to be effectuated.

79. In carrying out the overt acts and fraudulent scheme described herein, Defendants engaged in conduct in violation of federal laws, and specifically in violation of 18 U.S.C. §§ 1341 and 1343.

80.    As a direct and proximate result, GLIEC has been injured in its, and its owners, property by the predicate acts which make up Defendants' pattern of racketeering activity through the Enterprise by having: (a) paid its in state and out-of-state attorneys substantial fees and expenses in furtherance of stopping the existing and ongoing conspiracy and continued damage to GLIEC; (b) paid its in-state and out-of-state attorneys substantial fees and expenses to defend collection suits and other efforts due to the Defendants' actions; c) paid its in-state and out-of-state attorneys substantial fees and expenses to file the instant litigation; d) engaged legal and professional services to investigate and resolve the fraud perpetrated by Defendants; and e) have already lost outstanding receivables that clients have paid to Forever Funding LLC and Kingdom Kapital due to the false UCC lien notices and threats. In addition, because Defendants' actions were outrageous and committed with wanton and willful disregard and/or reckless indifference for the rights of GLIEC, and therefore, GLIEC and its individual owners and representatives, seek punitive damages against Defendants.

81.    The promotion and execution of the Transaction Events are part of a pattern of similar or identical activity by Defendants. The very nature of the criminal deception – that can be replicated to financially devastate other small business owners - is conduct possessing a threat of repetition and continued criminal activity.

**WHEREFORE,** Plaintiff, Great Lakes Industrial Environmental Construction, LLC, prays that judgment be entered in its favor and against Defendants, each and every one of them, jointly and severally, including an award of compensatory and actual damages, trebled damages, punitive damages, reasonable attorneys' fees, prejudgment interest, post-interest, costs, and an award that this Court deems just and proper.

**COUNT II**
**CONSPIRACY TO VIOLATE RICO PURSUANT TO 18 U.S.C. § 1962(d).**
(**AGAINST ALL DEFENDANTS**)

82.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 81 and incorporates them by reference herein as if fully set forth.

83.    This claim for relief arises under 18 U.S.C. § 1962(d) which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

84.    In violation of 18 U.S.C. § 1962(d), Defendants have, as set forth above, conspired to violate 18 U.S.C. § 1962(c). The conspiracy commenced in at least as early as 2024 and continued through the present. The object for the conspiracy was to obtain funds fraudulently by the use of deception in furtherance of Defendants' Conspiracy to obtain loans, cash advances, and other financial benefits.

85.    As set forth above, each of the Defendants knowingly, willingly, and unlawfully agreed and combined to conduct or participate directly or indirectly, in the conduct of the affairs and activities of the Enterprise through a pattern of racketeering activity, including acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. Defendants objectively manifested their agreement to the commission of the substantive RICO violations by at least one member of the conspiracy by words or acts, as detailed above.

86.    As set forth above, each Defendant committed at least one overt act of racketeering activity or other wrongful activity in furtherance of such conspiracy including systematic fraudulent practices designed to fraudulently obtain cash and other funding by use of deception and by the conversion of GLIEC's money and other property interests.

87.    The nature of the above-described acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that the Defendants not only agreed to conspire to violate 18 U.S.C. §1962(c), but that they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

88.    Absent Defendants' conspiracy and joint efforts, Defendants' Conspiracy would not be successful. Acting jointly, Defendants have had greater power and influence and have been successfully engaged in the activities of promoting and transacting the steps of the Transaction Events.

89.    As a direct and proximate result, GLIEC has been injured in its, and its owners, property by the predicate acts which make up Defendants' pattern of racketeering activity through the Enterprise by having: (a) paid its in state and out-of-state attorneys substantial fees and expenses in furtherance of stopping the existing and ongoing conspiracy and continued damage to GLIEC; (b) paid its in-state and out-of-state attorneys substantial fees and expenses to defend collection suits and other efforts due to the Defendants' actions; c) paid its in-state and out-of-state attorneys substantial fees and expenses to file the instant litigation; d) engaged legal and professional services to investigate and resolve the fraud perpetrated by Defendants; and e) have already lost outstanding receivables that clients have paid to Forever Funding LLC and Kingdom Kapital due to the false UCC lien notices and threats. In addition, because Defendants' actions were outrageous and committed with wanton and willful disregard and/or reckless indifference for the rights of GLIEC, and therefore, GLIEC and its individual owners and representatives, seek punitive damages against Defendants.

90.    The promotion and execution of the Transaction Events are part of a pattern of similar or identical activity by Defendants. The very nature of the criminal deception – that can be

replicated to financially devastate other small business owners - is conduct possessing a threat of repetition and continued criminal activity.

**WHEREFORE,** Plaintiff, Great Lakes Industrial Environmental Construction, LLC, prays that judgment be entered in its favor and against Defendants, each and every one of them, jointly and severally, including an award of compensatory and actual damages, trebled damages, punitive damages, reasonable attorneys' fees, prejudgment interest, post-interest, costs, and an award that this Court deems just and proper.

**COUNT III**
**FRAUDULENT MISREPRESENTATION**
**(AGAINST ALL DEFENDANTS)**

91.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 90 and incorporates them by reference herein as if fully set forth.

92.    As stated above, Defendants made material misrepresentations in connection with the alleged interest in purchasing the assets of GLIEC and the requests to obtain all of GLIEC's financial and business information so as to allow for the fraudulent and criminal deception to obtain funds in GLIEC's name, including:

a.    That the Defendants' interest in purchasing GLIEC's business was legitimate when it was not;

b.    That the Defendants' requests for access to its QuickBooks accounts, tax returns, operating accounts, client lists, and amounts and details of outstanding receivables were for the sole purpose of evaluating the purchase of the Company;

c.    That the agreement not to disclose any of GLIEC's financial or business information to any third-parties would be honored;

d. That the agreement not to use any of GLIEC's financial or business information for any purpose other than evaluating whether Defendants would purchase the Company and for what prices would be honored;

93. In addition, the following material omissions were part of the fraud:

a. Failing to disclose that Defendant, Dixon did not have sufficient assets to purchase the Company;

b. Failing to disclose that Defendant, Dixon, was encumbered with various IRS tax liens;

c. Failing to disclose that Defendant Dixon had been sued on multiple occasions for failure to pay on other loans, services and advances;

d. Failing to disclose that Defendant Dixon had conspired with Co-Defendant, Schoonover, to use his prior association and employment with GLIEC to obtain inside information on the GLIEC company;

e. Failing to disclose that Dixon had retained Schoonover to be the COO of his SRD companies;

f. Failing to disclose that Schoonover had entered into finance, cash advance, and/or loan agreements in the name of GLIEC and falsely representing that he was an owner of the Company.

g. Failing to disclose Defendants' Conspiracy and actual role in furtherance of the Transaction Events;

94. These misrepresentations and omissions of Defendants were known to Defendants to be false and untrue.

95.    At no point prior to learning that GLIEC was being sued and receiving UCC Lien Notices that the Defendants were fraudulently conveying false, misleading, and deception information and had obtained advances/loans in the name of GLIEC.

96.    The foregoing misrepresentations and omissions were material to GLIEC, and it, and its principals reasonably relied upon such representations and omissions.

97.    As detailed above, the foregoing material misrepresentations and omissions were made to GLIEC by the Defendants intentionally, knowingly, and/or with reckless disregard for the truth.

98.    As a result of the foregoing material misrepresentations and omissions, GLIEC allowed access to its confidential business and financial information, thus allowing Defendants to steal its identity and conduct the Transaction Events.

99.    As a direct and proximate result, GLIEC has been injured in its, and its owners, property by the predicate acts which make up Defendants' pattern of racketeering activity through the Enterprise by having: (a) paid its in state and out-of-state attorneys substantial fees and expenses in furtherance of stopping the existing and ongoing conspiracy and continued damage to GLIEC; (b) paid its in-state and out-of-state attorneys substantial fees and expenses to defend collection suits and other efforts due to the Defendants' actions; c) paid its in-state and out-of-state attorneys substantial fees and expenses to file the instant litigation; d) engaged legal and professional services to investigate and resolve the fraud perpetrated by Defendants; and e) have already lost outstanding receivables that client's have paid to Forever Funding LLC and Kingdom Kapital due to the false UCC lien notices and threats. In addition, because Defendants' actions were outrageous and committed with wanton and willful disregard and/or reckless indifference for

the rights of GLIEC, and therefore, GLIEC and its individual owners and representatives, seek punitive damages against Defendants.

**WHEREFORE,** Plaintiff, Great Lakes Industrial Environmental Construction, LLC, prays that judgment be entered in its favor and against Defendants, each and every one of them, jointly and severally, including an award of compensatory and actual damages, punitive damages, reasonable attorneys' fees, prejudgment interest, post-interest, costs, and an award that this Court deems just and proper.

**COUNT IV**
**CIVIL CONSPIRACY**
**(AGAINST ALL DEFENDANTS)**

100.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 99 and incorporates them by reference herein as if fully set forth.

101.    Defendants knowingly acted in concert with one another to actively and intentionally misrepresent and conceal their plan to obtain GLIEC's confidential financial and business information, and to use its image, name, assets, and credit worthiness to fraudulently conspire to obtain monies in GLIEC's name for the Defendants' benefit. In doing so, Defendants acted with full knowledge and awareness that GLIEC would not have allowed such access if not misled.

102.    Defendants acted in their respective roles as described above in furtherance of the Defendants' Conspiracy by working in coordination with each other, communicating with each other and conspiring with each other in a commonly understood and accepted plan of action, to wrongfully advise and misrepresent material facts to GLIEC for the purpose of effectuating Defendants' Conspiracy. Defendants acted as agents of one another in furtherance of their

conspiracy and the Defendants' Conspiracy when engaging in asset purchase negotiations with GLIEC.

103.    At no time prior to learning that its identity had been stolen and its confidential financial information misused and disclosed that the Defendants were conveying false, misleading, or omitted facts.

104.    The foregoing misrepresentations and omissions were material to GLIEC, and GLIEC and its principals reasonably relied upon such representations and omissions that subsequently enabled the Defendants to perform the various Transaction Events.

105.    There was a meeting of the minds between the Defendants to commit the unlawful acts alleged herein, and for each Defendant to operate as an agent for each other in furtherance of Defendants' Conspiracy. This conspiracy to commit these unlawful, overt acts was intended to harm and continue to harm GLIEC. One or more of the overt acts described above were in furtherance of the conspiracy. Said acts were tortious and unlawful, and engaged in solely for the purpose of Defendants' Conspiracy.

106.    Defendants conduct was deliberately done with the intent to induce GLIEC t to disclose its confidential financial and other business information, in furtherance of Defendants' Conspiracy.

107.    As a direct and proximate result, GLIEC has been injured in its, and its owners, property by the predicate acts which make up Defendants' pattern of racketeering activity through the Enterprise by having: (a) paid its in state and out-of-state attorneys substantial fees and expenses in furtherance of stopping the existing and ongoing conspiracy and continued damage to GLIEC; (b) paid its in-state and out-of-state attorneys substantial fees and expenses to defend collection suits and other efforts due to the Defendants' actions; c) paid its in-state and out-of-state

attorneys substantial fees and expenses to file the instant litigation; d) engaged legal and professional services to investigate and resolve the fraud perpetrated by Defendants; and e) have already lost outstanding receivables that clients have paid to Forever Funding LLC and Kingdom Kapital due to the false UCC lien notices and threats. In addition, because Defendants' actions were outrageous and committed with wanton and willful disregard and/or reckless indifference for the rights of GLIEC, and therefore, GLIEC and its individual owners and representatives, seek punitive damages against Defendants.

**WHEREFORE,** Plaintiff, Great Lakes Industrial Environmental Construction, LLC, prays that judgment be entered in its favor and against Defendants, each and every one of them, jointly and severally, including an award of compensatory and actual damages, punitive damages, reasonable attorneys' fees, prejudgment interest, post-interest, costs, and an award that this Court deems just and proper.

## COUNT V
## JOINT ENTERPRISE LIABILITY
### (AGAINST ALL DEFENDANTS)

108.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 107 and incorporates them by reference herein as if fully set forth.

109.    Defendants entered into a joint enterprise for the purpose to effectuate Defendants' Conspiracy.

110.    Each of the Defendants participated in and approved decisions made by the joint enterprise related to the Transaction Events.

111.    Defendants benefited financially from the common purpose of the joint enterprise, as intended by Defendants' Conspiracy, by receiving proceeds fraudulently obtained cash advances, loans, and credit.

112.    As a result, Defendants are jointly and severally liable as partners, joint venturers or members of a joint enterprise, for the tortious conduct of any one of their partners or joint venturers.

113.    As a direct and proximate result, GLIEC has been injured in its, and its owners, property by the predicate acts which make up Defendants' pattern of racketeering activity through the Enterprise by having: (a) paid its in state and out-of-state attorneys substantial fees and expenses in furtherance of stopping the existing and ongoing conspiracy and continued damage to GLIEC; (b) paid its in-state and out-of-state attorneys substantial fees and expenses to defend collection suits and other efforts due to the Defendants' actions; c) paid its in-state and out-of-state attorneys substantial fees and expenses to file the instant litigation; d) engaged legal and professional services to investigate and resolve the fraud perpetrated by Defendants; and e) have already lost outstanding receivables that clients have paid to Forever Funding LLC and Kingdom Kapital due to the false UCC lien notices and threats. In addition, because Defendants' actions were outrageous and committed with wanton and willful disregard and/or reckless indifference for the rights of GLIEC, and therefore, GLIEC and its individual owners and representatives, seek punitive damages against Defendants.

**WHEREFORE,** Plaintiff, Great Lakes Industrial Environmental Construction, LLC, prays that judgment be entered in its favor and against Defendants, each and every one of them, jointly and severally, including an award of compensatory and actual damages, punitive damages, reasonable attorneys' fees, prejudgment interest, post-interest, costs, and an award that this Court deems just and proper.

**COUNT VI**
**NEGLIGENT MISREPRESENTATION**
**(In the Alternative)**
**(AGAINST DIXON AND SCHOONOVER)**

114.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 113 and incorporates them by reference herein as if fully set forth.

115.    Defendants Dixon and Schoonover made material misrepresentations in connection with the alleged interest in purchasing the assets of GLIEC and the requests to obtain all of GLIEC's financial and business information so as to allow for the fraudulent and criminal deception to obtain funds in GLIEC's name, including:

 a.  That the Defendants' interest in purchasing GLIEC's business was legitimate when it was not;

 b.  That the Defendants' requests for access to its QuickBooks accounts, tax returns, operating accounts, client lists, and amounts and details of outstanding receivables was for the sole purpose of evaluating the purchase of the Company;

 c.  That the agreement not to disclose any of GLIEC's financial or business information to any third-parties would be honored;

 d.  That the agreement not to use any of GLIEC's financial or business information for any purpose other than evaluating whether Defendants would purchase the Company and for what prices;

116.    In addition, Defendants Dixon and Schoonover should have disclosed the following material omissions:

a.  Failing to disclose that Defendant, Dixon did not have sufficient assets to purchase the Company;

b.  Failing to disclose that Defendant, Dixon, was encumbered with various IRS tax liens;

c.  Failing to disclose that Defendant Dixon had been sued on multiple occasions for failure to pay on other loans, services and advances;

d.  Failing to disclose that Defendant Dixon had conspired with Co-Defendant, Schoonover, to use his prior association and employment with GLIEC to obtain inside information on the Company;

e.  Failing to disclose that Dixon had retained Schoonover to be the COO of his SRD companies;

f.  Failing to disclose that Schoonover had entered into finance, cash advance, and/or loan agreements in the name of GLIEC and falsely representing that he was an owner of the Company;

g.  Failing to disclose Defendants' Conspiracy and actual role in furtherance of the Transaction Events;

117.    Defendants Dixon and Schoonover did not exercise reasonable care or competence in obtaining information from GLIEC and/or communicating the true intent behind the asset purchase interest and negotiations.

118.    Defendants Dixon and Schoonover had a duty to make sure that the representations to GLIEC, including omissions of fact not made to GLIEC and its principals, were in fact, not true.

119.    The foregoing misrepresentations and omissions were material to GLIEC, and it

reasonably relied upon such representations and omissions in engaging in the negotiations over the asset purchase.

120.    Defendants Dixon and Schoonover breached their duties owed to GLIEC, by making material misrepresentations or omissions as detailed above.

121.    As a direct and proximate result of Defendants Dixon and Schoonover's negligent misrepresentation, GLIEC has been injured by having: (a) paid its in state and out-of-state attorneys substantial fees and expenses in furtherance of stopping the existing and ongoing conspiracy and continued damage to GLIEC; (b) paid its in-state and out-of-state attorneys substantial fees and expenses to defend collection suits and other efforts due to the Defendants' actions; c) paid its in-state and out-of-state attorneys substantial fees and expenses to file the instant litigation; d) engaged legal and professional services to investigate and resolve the fraud perpetrated by Defendants; and e) have already lost outstanding receivables that clients have paid to Forever Funding LLC and Kingdom Kapital due to the false UCC lien notices and threats. In addition, because Defendants' actions were outrageous and committed with wanton and willful disregard and/or reckless indifference for the rights of GLIEC, and therefore, GLIEC and its individual owners and representatives, seek punitive damages against Defendants.

**WHEREFORE,** Plaintiff, Great Lakes Industrial Environmental Construction, LLC, prays that judgment be entered in its favor and against Defendants Seth Dixon and Joseph Schoonover, each of them, jointly and severally, including an award of compensatory and actual damages, reasonable attorneys' fees, prejudgment interest, post-interest, costs, and an award that this Court deems just and proper.

**COUNT VII**
**DECEPTION**
**(SETH DIXON AND JOSEPH SCHOONOVER)**

122.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 121 and incorporates them by reference herein as if fully set forth.

123.    Indiana Code 35-43-5-3.5. (Identity deception) provides as follows:

Sec. 3.5. (a) Except as provided in subsection (c),

a person who, with intent to harm or defraud another person, knowingly or intentionally obtains, possesses, transfers, or uses identifying information to profess to be another person, commits identity deception, a Level 6 felony.

124.    Using confidential financial, trade and tax identification information, Defendants, Dixon, Schoonover, SRD Excavation and SRD Environmental falsely and fraudulently entered into finance/loan agreements identifying themselves as agents and/or owners of GLIEC.

125.    None of these defendants were agents or owners of GLIEC and had no authority to act on its behalf.

126.    In the Forever Funding agreement, Defendant, Joseph Schoonover signed as an authorized representative of GLIEC d/b/a SRD Excavation.

127.    Schoonover was not an owner, officer, director or authorized agent of GLIEC.

128.    GLIEC does not operate or conduct business under the name SRD Excavation or SRD Environmental.

129.    In the Kingdom Kapital agreement, Defendant, Dixon signed as owner and authorized representative of GLIEC.

130.    Dixon was not an owner, officer, director or authorized agent of GLIEC.

131.    None of the defendants had authority to enter into any finance or loan agreement on behalf of GLIEC.

132.    GLIEC has suffered significant costs in attempting to respond to the false and fraudulent filings, collection efforts and business interference..

133.    Defendant Dixon and Schoonover's misrepresentation of themselves as an agent of GLIEC authorized to sign financing or loan agreements constitutes deception pursuant to I.C. 34-15-1 et seq.

134.    GLIEC is entitled to recover damages caused by Dixon and Schoonover's defamation.

135.    Dixon and Schoonover's misrepresentations further constitute deception, pursuant to I.C. 35-43-5-3.

136.    GLIEC is entitled to recover damages caused by Dixon and Schoonover's deception.

137.    GLIEC is further entitled to recover treble damages and attorney fees as a result of Dixon and Schoonover's intentional, deceptive, and defamatory acts.

WHEREFORE, Plaintiff, Great Lakes Industrial Environmental Construction, LLC, prays that judgment be entered in its favor and against Defendants Seth Dixon and Joseph Schoonover, each of them, jointly and severally, including an award of compensatory and actual damages, reasonable attorneys' fees, prejudgment interest, post-interest, costs, and an award that this Court deems just and proper.

## COUNT VIII
## DEFAMATION
## (SETH DIXON AND JOSEPH SCHOONOVER)

138.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 137 and incorporates them by reference herein as if fully set forth.

139.    Defendants Dixon and Schoonover made material misrepresentations in connection with the alleged interest in purchasing the assets of GLIEC and the requests to obtain all of GLIEC's financial and business information so as to allow for the fraudulent and criminal deception to obtain funds in GLIEC's name.

140.    Defendants used GLIEC's information and identity under false pretenses to obtain loans, cash advances and/or credit.

141.    Defendants entered into a contractual agreement with Kingdom Kapital and Forever Funding in the name of GLIEC and warranted that it would pay monies under the agreement.

142.    Defendants breached those agreements by failing to pay, thus impugning the reputation, esteem, respect, and credit worthiness of GLIEC.

143.    In the Forever Funding agreement, Defendant, Joseph Schoonover signed as an authorized representative of GLIEC d/b/a SRD Excavation.

144.    Schoonover was not an owner, officer, director or authorized agent of GLIEC.

145.    In the Kingdom Kapital agreement, Defendant, Dixon signed as owner and authorized representative of GLIEC.

146.    Dixon was not an owner, officer, director or authorized agent of GLIEC.

147.    None of the defendants had authority to enter into any finance or loan agreement on behalf of GLIEC.

148.    The application submitted to the lending companies was incorrect, misstated facts and was signed by non-GLIEC personnel.

149.    Dixon and Schoonover were not agents, owners, or representatives of GLIEC when each signed the financing agreements.

150.    GLIEC has suffered significant costs in attempting to correct the erroneous loans/advances attributed to GLIEC, defending the New York lawsuit filed against it, and attempting to stop the lending companies from fraudulently and negligently advising GLIEC's clients that it owes any money under the agreements due to its stolen identity.

151.    Dixon and Schoonover's misrepresentation constitute defamation pursuant to I.C. 34-14-1 et. seq.

152.    GLIEC is entitled to recover damages caused by this defamation.

153.    GLIEC is further entitled to recover treble damages and attorney fees as a result of Dixon and Schoonover's deceptive and defamatory acts.

WHEREFORE, Plaintiff, Great Lakes Industrial Environmental Construction, LLC, prays that judgment be entered in its favor and against Defendants Seth Dixon and Joseph Schoonover, each of them, jointly and severally, including an award of compensatory and actual damages, reasonable attorneys' fees, prejudgment interest, post-interest, costs, and an award that this Court deems just and proper.

**COUNT IX**
**INDIANA RICO- I.C. 35-45-6-2(3)**
**(ALL DEFENDANTS)**

154.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 153 and incorporates them by reference herein as if fully set forth.

155.    The Indiana General Assembly enacted the Indiana RICO Act, I.C. 35-45-6-2. The statute imposes liability on any person who "conducts or otherwise participates in the activities of the enterprise.

> Sec. 2. A person:
>
> (1) who has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and who uses or invests those proceeds or the proceeds derived from them to acquire an interest in property or to establish or to operate an enterprise;
>
> (2) who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise; or
>
> (3) who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity;
>
> commits corrupt business influence, a Level 5 felony.

156.    Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving GLIEC and obtaining its property for Defendants' gain. Defendants either knew or recklessly disregarded the fact that their misrepresentations and omissions described herein were material, and GLIEC relied upon the misrepresentations and omissions described herein.

157.    As set forth above, Defendants violated 18 U.S.C. §1962(c) by conducting or participating directly or indirectly in the conduct of the affairs of the Enterprise through a pattern of racketeering. Through the fraudulent and wrongful conduct described herein, Defendants deprived GLIEC of property rights. In order to successfully execute their scheme in the manner set forth herein, Defendants had a common plan and system to market and promote the Transaction Events. The Enterprise was the vehicle for the common plan and system to be effectuated.

158.    In addition to federal liability, under Indiana RICO, Dixon and Schoonover are both liable direct and indirect participation and for otherwise participating in the scheme.

159.    As a direct and proximate result, GLIEC has been injured in its, and its owners, property by the predicate acts which make up Defendants' pattern of racketeering activity through the Enterprise by having: (a) paid its in state and out-of-state attorneys substantial fees and expenses in furtherance of stopping the existing and ongoing conspiracy and continued damage to GLIEC; (b) paid its in-state and out-of-state attorneys substantial fees and expenses to defend collection suits and other efforts due to the Defendants' actions; c) paid its in-state and out-of-state attorneys substantial fees and expenses to file the instant litigation; d) engaged legal and professional services to investigate and resolve the fraud perpetrated by Defendants; and e) have already lost outstanding receivables that clients have paid to Forever Funding LLC and Kingdom Kapital due to the false UCC lien notices and threats. In addition, because Defendants' actions were outrageous and committed with wanton and willful disregard and/or reckless indifference for the rights of GLIEC, and therefore, GLIEC and its individual owners and representatives, seek punitive damages against Defendants.

**WHEREFORE,** Plaintiff, Great Lakes Industrial Environmental Construction, LLC, prays that judgment be entered in its favor and against Defendants, each and every one of them, jointly and severally, including an award of compensatory and actual damages, trebled damages, punitive damages, reasonable attorneys' fees, prejudgment interest, post-interest, costs, and an award that this Court deems just and proper.

**COUNT X**
**CONVERSION**
**(ALL DEFENDANTS)**

160.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 159 and incorporates them by reference herein as if fully set forth.

161.    Under Indiana law, "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor." Ind.Code Ann. § 35-43-4-3 (West, PREMISE through 2003 1st Regular Sess.)

162.    Under Indiana law, "(a) A person engages in conduct `intentionally' if, when he engages in the conduct, it is his conscious objective to do so. (b) A person engages in conduct `knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code Ann. § 35-4-1-2-2.

163.    Indiana law provides, to "`exert control over property' means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." Finally, I.C. § 35-43-4-1(b) provides, "a person's control over property of another person is `unauthorized' if it is exerted ... without the other person's consent...." I.C. § 35-43-4-1.

164.    Defendants knowingly and/or intentionally exercising unauthorized control over GLIEC's property, including, its name, brand, Tax ID number, and credit as well as its trade secret, proprietary and confidential information.

165.    By fraudulently using the GLIEC identity, and by purportedly signing contracts without its consent, Defendants have caused the Defendants to lose property and to have its name, business and assets encumbered by Defendants conversion by way of fraudulent and criminal deception.

166.    To date, third-parties seek to recover $372,750.00 from GLIEC based upon its alleged signature to financing agreements. As such, GLIEC is facing possible financial

responsibility for these amounts and has already been sued and subject to UCC lien notice and collections with loss of receivables.

167.    These facts establish the elements of criminal conversion and defendants are liable.

168.    Further, under Ind.Code Ann. § 34-24-3-Regular Sess.), a person who proves the elements of criminal conversion by a preponderance of the evidence can recover up to three times the actual damages, the costs of the action, and reasonable attorney's fees. *Greco v. KMA Auto Exch., Inc., 765 N.E.2d 140 (Ind.Ct.App.2002).*

169.    Defendants are guilty of criminal conversion and as such are entitled to recover three times  the amount of damages caused by the Defendants, as well as costs and attorney fees' incurred in bringing the lawsuit.

**WHEREFORE,** Plaintiff, Great Lakes Industrial Environmental Construction, LLC, prays that judgment be entered in its favor and against Defendants, each and every one of them, jointly and severally, including an award of compensatory and actual damages, trebled damages, punitive damages, reasonable attorneys' fees, prejudgment interest, post-interest, costs, and an award that this Court deems just and proper.

## COUNT XI
### (UNJUST ENRICHMENT)
### (ALL DEFENDANTS)

170.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 169 and incorporates them by reference herein as if fully set forth.

171.    As a direct and proximate result of Defendants' misconduct as alleged herein, Defendants were enriched, at the expense of GLIEC, by accepting monies and benefits for their own personal gain.

172.    Despite Defendants' fraudulent, deceptive and criminal conduct, GLIEC, not the Defendants, have been damaged, including legal actions attempting to require GLIEC to be responsible for Defendants' debts and conduct as well as significant expenses and damages incurred in defending lawsuits, collection claims, and attorney fees.

173.    Defendants, through their wrongful conduct described above, have reaped substantial profit and revenue from their wrongful and unlawful conduct.

174.    The enrichment by Defendants of this substantial profit and revenue was unjust and at the expense of GLIEC.

175.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from the fraudulently obtained cash advances, loans and credit and GLIEC has and continues to incur substantial damages as a result of the misrepresentations and unlawful conduct by the Defendants.

176.    Therefore, any monetary benefits obtained by the Defendants in furtherance of its misconduct should be forfeited and returned to GLIEC.

**WHEREFORE,** Plaintiff, Great Lakes Industrial Environmental Construction, LLC, prays that judgment be entered in its favor and against Defendants, each and every one of them, jointly and severally, including an award of compensatory and actual damages, trebled damages, punitive damages, reasonable attorneys' fees, prejudgment interest, post-interest, costs, and an award that this Court deems just and proper.

By:    **/s/ *Richard P. Long***
Richard P. Long
LONG | MEIHOFER LLC
4906 Main Street, Suite 101
Lisle, IL. 60532
219-758-5050/630-796-0799
rpl@longmeihoferlaw.com

## **JURY TRIAL DEMANDED**

Plaintiff, Plaintiff Great Lakes Industrial Environmental Construction LLC requests a jury trial on all questions of fact raised by the Complaint.

By:     **/s/ *Richard P. Long***
One of his attorneys
Richard P. Long
LONG │ MEIHOFER LLC
4906 Main Street, Suite 101
Lisle, IL. 60532
630-796-0799
rpl@longmeihoferlaw.com